HIBERNIA BANK AND TRUST COMPANY, Plaintiff, *v.* J. ARON & Co., INC., Defendant.

Supreme Court, New York County, May 31, 1928.

*J. S. Wise,* for the plaintiff.

*Kirlin, Woolsey, Campbell, Hickox & Keating* [*C. Keating* of counsel], for the defendant.

SHERMAN, J. Defendant had sold through a broker to one Koerner, of New Orleans, by contract dated April 27, 1920, " 400 tons of Java white sugar tel quel "— meaning " as is " — to arrive at New York from India. Koerner undertook to furnish the seller with a confirmed irrevocable letter of credit and thereby provide for payment for the sugar. He at once resold the sugar to Constantin, David & Co., of New Orleans, by a contract which described the merchandise as " Java white sugar," with a warranty that it was " very desirable, equal to standard American granulated, 98 to 99 polarization." It may be observed in passing that this warranty was impossible of fulfillment, for all Java white sugar

is as a matter of fact inferior to standard American granulated. Koerner's contract with his vendee also provided for an indemnity of one cent per pound if the sugar failed to meet these specifications. Defendant was not cognizant of this resale contract which, with some form of guaranty to plaintiff by Constantin, David & Co., was lodged with plaintiff when the letter of credit was sought. Plaintiff issued the letter of credit as " for the account of Constantin, David & Co.," with which defendant had no dealings. Indeed, up to May 11, 1920, defendant's signed contract dated April 27, 1920, was in the hands of the broker who had effected the sale, and was on that date returned to defendant, who then learned that Koerner was its vendee. It accordingly requested that the bank be asked to amend the credit so that it would pay against drafts made out in Koerner's name. On June 8, 1920, plaintiff wrote defendant that at Koerner's request it had instructed Chemical National Bank to pay upon the letter against documents presented in Koerner's name. The Chemical Bank confirmed to defendant the receipt of these instructions. The letter of credit was thus received by defendant in fulfillment of Koerner's obligation to open a confirmed letter of credit in defendant's favor for the full amount of the invoice payable net cash on presentation of ocean documents. This letter of credit called for certain documents to accompany drafts and defined plaintiff's engagement as follows: " We hereby agree with *bona fide* holders that all drafts drawn by virtue of this credit and in accordance with the above stipulated terms shall meet with due honor upon presentation at the office of Hibernia Bank & Trust Co. and proceeds will be paid at our office if drawn and negotiated prior to August 1, 1920." Defendant's drafts upon this letter were presented to and honored in July and August, 1920, by the Chemical National Bank in the aggregate amount of $199,360. The sugar, upon arrival at New York city from India, was transported to New Orleans upon bills of lading in the name of plaintiff. Upon arrival there it was rejected by Constantin, David & Co. as not complying with its purchase contract. The sugar market had undergone a precipitous price decline. Plaintiff notified defendant of this rejection of the merchandise and tendered it to defendant, demanding repayment of the amounts paid out upon the drafts. Compliance was refused. The sugar was then sold.

This action followed to recover $132,700.10, the amount of the drafts as diminished by the proceeds of that sale. At the end of the letter of credit was the following clause, viz.: " This letter of credit is subject to the terms and conditions of contract attached to the guarantee covering this letter, * * *;" but no copy of

that " guarantee " or the " contract " (which turns out to be Koerner's resale contract with Constantin, David & Co.) was attached to the letter of credit or sent to defendant, and defendant was ignorant of their provisions when it acted under the letter and turned over its documents resulting in the delivery of the merchandise to plaintiff in New Orleans. It acted in the belief that this guaranty and contract were operative between plaintiff and its customer in the nature of a covering guaranty against loss and did not affect the engagement of the plaintiff bank to honor all drafts when accompanied by documents according to the tenor of the letter of credit. When these drafts were presented with documents, it was not claimed that this clause was of any force as affecting acceptance and payment of drafts. The Chemical National Bank indeed had refused at plaintiff's direction to accept the drafts. Constantin, David & Co. had so requested and plaintiff at first yielded to that demand. The decline in the sugar market foreshadowed an enormous loss to the purchaser. Plaintiff was naturally averse to dishonoring its engagement, particularly when, as testified by its president, " the documents which were produced were in accordance with the terms of the credit, * * * and we came to the conclusion that those documents were such and were so in line with the credit that we couldn't refuse on those documents." It realized that it was bound, irrespective of that final clause, if the documents presented complied with the face of the letter, and thereupon directed the Chemical Bank to accept and pay defendant's drafts, which was done. I find that the sugar upon its arrival at New York and shipment to New Orleans· was merchantable Java white sugar and satisfied the requirements of defendant's contract with Koerner. It was a good delivery under that contract. It did not, however, comply with the specifications of the resale contract to Constantin, David & Co. Plaintiff insists that defendant had no right to draw against the funds except for merchandise specified in the contract attached to the guaranty and that defendant imposed upon the bank in drawing upon it and taking its money against goods that did not comply with that contract, and that the obligation to repay arose when it refused to receive back the tendered merchandise.

It is likewise urged that when defendant drew it warranted that it had shipped merchandise which answered the description of the contract attached to the guaranty and that its drawing without shipment of merchandise of that quality was wrongful and accordingly an action for money had and received arises and is well grounded, irrespective of whether or not defendant knew the terms of the contract between Koerner and Constantin, David & Co.,

for the bank was entitled to have as security for its advances sugars of the grade described in that last-mentioned contract to which the letter of credit was "subject." Reliance is placed upon *Welsh* v. *Gossler* (89 N. Y. 540) as supporting this view; but there the bank which had issued its letter of credit for the account of a purchaser, Finlay, had at vendor's request extended that letter of credit to cover shipments made at a later date than Finlay had contracted for. When the delayed shipment arrived, Finlay refused to accept it because not shipped in compliance with his contract. The bankers notified defendants (vendors) and demanded return of the advances made by them to defendants, offering to surrender the merchandise upon such repayment. This was refused, and after due notice the sugars were sold and action brought to recover the balance. The case does not apply, for there the bankers, by enlarging the time limit of shipment, entered into a new relationship with the sellers as a principal in their own behalf, becoming factors for the sellers.

Nor can plaintiff's contention be sustained that it should recover upon an implied contract or as for money had and received, which in equity and good conscience belongs to it. The weight of the equities is greatly against plaintiff. Here defendant, which has performed its contract of sale, is asked to return to plaintiff the purchase moneys which plaintiff paid to it as Koerner's agent, having upon the faith of such payment delivered to plaintiff the merchandise sold. I know of no theory of law applicable here which must be followed to accomplish that result. There was no implied contract so to do (*Miller* v. *Schloss*, 218 N. Y. 400), for there is here "no fact through which natural equity or good conscience should obligate the defendant to pay the plaintiffs." (*Miller* v. *Schloss, supra,* 409.) Indeed, under the contract between Koerner and Constantin, David & Co., the latter could not have rejected the sugar, but would have been entitled only to the amounts therein provided to be paid if the warrants were not lived up to. The plaintiff, if it seek to stand upon that contract, obtained no greater right. The final clause of the letter of credit was not intended to and did not place any obstacle in the way of the seller's collecting and retaining the purchase money as between it and the bank which had issued the letter of credit. That clause could only govern the bank's right of action against its customer. This follows from the operative language of the letter itself, as well as from the nature of the transaction and the purpose of the letter of credit.

Commercial letters of credit have come into general use in international sales transactions where much time necessarily elapses

between the sale and the receipt by a purchaser of the merchandise' during which interval great price changes may occur. Buyers and sellers struggle for the advantage of position. The seller is desirous of being paid as surely and as soon as possible, realizing that the vendee at a distant point has it in his power to reject on trivial grounds merchandise on arrival, and cause considerable hardship to the shipper. Letters of credit meet this condition by affording celerity and certainty of payment. Their purpose is to insure to a seller payment of a definite amount upon presentation of documents. The bank deals only with documents. It has nothing to do with the quality of the merchandise. Disputes as to the merchandise shipped may arise and be litigated later between vendor and vendee, but they may not impede acceptance of drafts and payment by the issuing bank when the proper documents are presented. The bank was absolutely bound to make payment under the letter even if it had known or had reason to believe that the sugar was not of the quality contracted for. " The bank was concerned only in the drafts and the documents accompanying them." (O'Meara Co. v. National Park Bank, 239 N. Y. 386, 396.) It may not refuse payment even if the documents do not conform to the stipulations of the buyer-seller contract. (Frey & Son v. Sherburne Co., 193 App. Div. 849; Laudisi v. American Exchange National Bank, 239 N. Y. 234.) Having made the payments called for by its contract, plaintiff under the present circumstances is not entitled to their return. (See Bank of East Asia v. Pang, 140 Wash. 603.)

Judgment is directed upon the merits in favor of defendant.