[Civ. No. 67271. Second Dist., Div. One. Mar. 29, 1984.]

CALIFORNIA OVERSEAS BANK, Plaintiff and Appellant, v.
FRENCH AMERICAN BANKING CORPORATION,
Defendant and Respondent.

180

COUNSEL

Graham & James, Don A. Proudfoot, Jr., Stephen T. Owens and Teresa A. Blasberg for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Richard P. Levy and Willard K. Halm for Defendant and Respondent.

OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff California Overseas Bank appeals from the trial court's grant of defendant French American Banking Corporation's motion to quash service of process for lack of personal jurisdiction.[1]

### STATEMENT OF FACTS

The underlying litigation stems from the "back-to-back" issuance of two letters of credit allegedly issued, in conjunction with the sale and purchase of an air pollution control system, by Norco Process Corporation (Norco), a California corporation, to KSTAR International, another California corporation, in 1979. The parties arranged with Balfour Maclaine Overseas Ltd. (Balfour), an international trading and finance corporation, for Balfour to finance the transaction by arranging for the issuance of two letters of credit, one from its account with defendant French American Banking Corporation (FAB), a New York corporation, in favor of the seller, Norco, and the other in favor of Balfour, issued by plaintiff California Overseas Bank (COB), a California banking corporation, from the account of its customer, KSTAR, the buyer. The COB letter of credit was confirmed on December 20, 1979, by Security Pacific National Bank (Security Pacific), with whom COB maintains a correspondent banking relationship. As security for the issuance of its letter of credit, COB was to take a security interest in the air pollution control system to be purchased by KSTAR.

Following the issuance of COB's letter of credit, FAB purchased, at a discount, all of Balfour's claim and interest in that credit. FAB then submitted documents as required under COB's letter of credit.

---

[1]The order is expressly made appealable by Code of Civil Procedure section 904.1, subdivision (c).

COB filed the present lawsuit in June 1981, seeking damages and injunctive relief for breach of beneficiary's warranty, fraud, negligent misrepresentation and declaratory relief.

Plaintiff also filed an application for temporary restraining order and order to show cause re preliminary injunction; a hearing was held on June 25, 1981, before Judge Robert Weil. At the hearing, FAB was represented by counsel. After introducing himself, counsel simply stated that he was "for French American Banking Corporation." During the hearing, the court asked, "Why shouldn't an order to show cause be set and why shouldn't a temporary restraining order issue?" Counsel then proffered two reasons why the court should not interfere with the payment to FAB by Security Pacific of COB's letter of credit obligation:

"COUNSEL: First of all, based on what he has said, I don't know that there is any reason to have any temporary restraining order be entered, but with regard—

"THE COURT: Something is going to be paid tomorrow, isn't it?

"COUNSEL: Exactly. The main reason why this court—or the reasons why this court should not interrupt that procedure are among the following: Number one, letters are [sic] credit are instruments by which businesses throughout the world—

"THE COURT: I know. They are sacrosanct and all of that.

"COUNSEL: Number two, to the extent that any monies are paid to French American Bank, those monies will be kept or spent by a company that is a wholly-owned subsidiary of one of the, if not the largest banks in the world, as far as customer deposits are concerned, a bank which itself has, as I understand it—

"THE COURT: Who is supposed to be paying to French American Bank tomorrow?

"COUNSEL: Security Pacific National Bank.

"THE COURT: Security Pacific is paying to French American. French American now has the paper.

"COUNSEL: Exactly.

"THE COURT: French American got the paper by purchasing it from—

"COUNSEL: Balfour Maclaine Overseas Ltd." Plaintiff's application was denied by Judge Weil on June 25, 1981.

A motion to quash service of process on the ground that the court lacked in personam jurisdiction over FAB was filed July 30, 1981; defendant's motion was granted by Judge Dickran Tevrizian on December 21, 1981. The court found "Moving party's French American Banking Corporation's motion to quash service of process for lack of jurisdiction is granted. Court further finds that French American Banking Corporation did not make a general appearance on 6/25/81."

Plaintiff's appeal was timely filed.

## CONTENTIONS

### I

Plaintiff contends defendant waived any jurisdictional objections by making a general appearance in the superior court.

### II

In the alternative, plaintiff asserts economic benefits which defendant derived from its acts are sufficient to subject defendant to special regulation.

### III

Finally, plaintiff contends the trial court erroneously granted defendant's motion to quash service of process for lack of personal jurisdiction inasmuch as defendant's participation in events which prompted plaintiff to issue a letter of credit was sufficient to subject defendant to the court's limited jurisdiction.

## DISCUSSION

We are convinced, on the basis of plaintiff's initial contention, that FAB waived its objection to the court's jurisdiction by making a general appearance at the June 25, 1981, hearing on plaintiff's appli-

cation for a temporary restraining order and order to show cause re preliminary injunction.[2]

■ According to Code of Civil Procedure section 1014, a defendant has made an appearance when "an attorney gives notice of appearance for him." A defendant who has made a formal appearance has submitted himself to the jurisdiction of the court. (*California Pine Box & Lumber Co.* v. *Superior Court* (1910) 13 Cal.App. 65 [108 P. 882].) The appearance will be considered "general" in nature if the defendant acts in a manner "showing of a 'purpose of obtaining any ruling or order of the court going to the merits of the case'." (*Chilcote* v. *Pacific Air Transport* (1937) 24 Cal.App.2d 32, 35 [74 P.2d 300], quoting from *Davenport* v. *Superior Court* (1920) 183 Cal. 506, 509 [191 P. 911].)

■ On June 25, 1981, FAB was represented in court by counsel. After introducing himself, counsel stated that he was "for French American Banking Corporation." During the hearing, the court asked "Why shouldn't an order to show cause be set and why shouldn't a temporary restraining order issue?" Counsel then proffered two reasons why the court should not interfere with the payment to FAB by Security Pacific of COB's letter of credit obligation.

■ In order to determine whether counsel's remarks constitute a general or a special appearance, we look not to whether a party expressed an intent that the appearance be considered general or special, but rather to the "character of the relief asked." (*Hernandez* v. *National Dairy Products* (1945) 126 Cal.App.2d 490, 492 [272 P.2d 799].) If the defendant "raises any other question, or asks for any relief which can only be granted upon the hypothesis that the court has jurisdiction of his person, his appearance is general . . . ." (*Olcese* v. *Justice's Court* (1909) 156 Cal. 82, 87 [103 P. 317].) ■ Thus, it is clear that FAB made a general appearance, for counsel clearly asked the court for a decision in FAB's favor. Rather than confining his remarks to a denial of the court's jurisdiction over FAB or simply to clarifications of fact in order to assist the court, counsel addressed the propriety of the issuance of the temporary restraining order and, thus, FAB's right to payment. Inasmuch as the underlying suit involved just that

---

[2]The June 25 hearing was held in chambers; we find no impropriety in the proceeding inasmuch as California law has long held that a judgment rendered in chambers is not necessarily void where the matter being heard is within the court's jurisdiction and the parties are represented by counsel. (*Ex Parte Bennett* (1872) 44 Cal. 84.) In the present case, there can be no doubt the court had jurisdiction over the subject matter; moreover, the presence of all counsel as well as the court reporter attest to the regularity of the proceeding.

question, we cannot but conclude that counsel addressed the merits of the case when he opposed the temporary restraining order. Having addressed the merits of the case, FAB submitted itself to the jurisdiction of the court.

In view of the conclusion reached *ante,* we need not address plaintiff's remaining contentions.

The order is reversed.

Dalsimer, J., concurred.

**HANSON (Thaxton), J.**—I respectfully dissent. I would affirm the superior court's order granting the motion of defendant/respondent French American Banking Corporation (FAB) to quash service of process for lack of jurisdiction.

On this appeal, defendant FAB contended that (1) the California courts did not acquire jurisdiction over it due to the lack of the necessary minimum California contact involved in the transaction sued upon, and (2) that there was an insufficient showing by plaintiff of the existence of the requisite business relationship of FAB in California, or of sufficient economic benefits derived by FAB from California, which would subject it to the jurisdiction of the California courts. In addition, FAB disputed that the appearance of counsel for FAB during the proceedings below constituted an appearance subjecting it to the jurisdiction of the California courts. The majority have determined that there was such an appearance, and have reversed the trial court's order on that basis alone. As I believe the order made below should be affirmed, I will address all *three* of FAB's contentions on this appeal.

In addition to the facts set forth in the majority opinion, I add the following to clarify the nature of the relationship of the various parties and the litigation which has raised the jurisdictional issue.

In plaintiff California Overseas Bank's (COB) complaint, it cited alleged irregularities in the documents delivered by FAB; plaintiff COB also alleged the following:

"(a) No Air Pollution Control System (Model 7000) was ever owned by Balfour Maclaine Overseas Ltd.;

"(b) No Air Pollution Control System (Model 7000) was ever sold by Balfour Maclaine Overseas Ltd. to KSTAR;

"(c) No Air Pollution Control System (Model 7000) was ever delivered by Balfour Maclaine Overseas Ltd. to KSTAR;

"(d) No Air Pollution Control System (Model 7000) ever existed as the subject of the Letter of Credit transaction;

"(e) No Air Pollution Control System (Model 7000) existed or was sold to KSTAR by anyone in December 1979;

"(f) The 'commercial' invoice presented was in fact a financing invoice;

"(g) The 'commercial' invoice presented is undated;

"(h) The 'commercial' invoice is on the printed letterhead of Balfour-H.H. Trading Ltd. with the name Balfour Maclaine Overseas Ltd. typed in above it; and

"(i) The draft presented purports to be executed by 'Don Shu' (the correct name would be 'Dong Suh'), which execution is a forgery."

Plaintiff COB supported its allegations with excerpts from depositions of John Ray (Ray), senior vice president of FAB (sometimes referred to as FABC). Excerpts proffered as particularly important included the following:

(1) "Q. (by COB's counsel): At the time that the transactions were approved and entered into the aspect of the purchase of the Balfour obligation by FABC, I take it that was an agreed upon part of the transaction.

"What I'm trying to get at is at the time the bank agreed to do a transaction, FABC understood that the transaction would be essentially in three parts, namely its issuance of a credit to NORCO, it receipt of a credit from COB on behalf of Balfour and then thirdly, the receipt of the documents and the confirmation by Security Pacific which it would purchase from Balfour so that Security Pacific would be the obligor?

"A. Exactly. The point of the transaction was the third step, purchasing the commitment.

"Q. And all of that was agreed upon at the inception and understood from the inception?

"A. Exactly."

(2) "Q. Would you agree with me that essentially speaking a bank can issue two types of letters of credit; one is a commercial documentary credit involving the sale of goods wherein the bank has a security interest in those goods to protect itself [the type of letter of credit involved in this case], and the second kind would be a standby or guarantee credit where the bank is essentially relying exclusively on the credit of its customer and at least as far as American banks are concerned, is required to book that immediately as a loan to the customer?

"A. Would I agree, yes."

(3) "Q. Did you understand as a result of your conversation with Mr. Suh [the Managing Director of Balfour] who would be the responsible party in the sense of repayment of the money that FABC would advance?

"A. Security Pacific.

"Q. Did you regard the transaction that you were going to enter into as the equivalent of a loan to Security Pacific?

"A. Yes."

(4) "Q. When this first transaction was made do you know how it was booked by FABC?

"A. It was booked—we financed it by acceptance. The acceptance liability was carried in the name of Security Pacific?

"Q. Was it booked in essence as a loan to Security Pacific?

"A. Exactly. It was booked as obligation [sic] of Security Pacific."

(5) "Q. Let me again refer you to Exhibit 6 which is number 28 of your documents. Was that obligation not confirmed by Security Pacific?

"A. That's right, that's correct.

"Q. Did you book that as a loan to COB?

"A. Yes."

(6) "Q. In connection with that transaction and that booking, did you do any credit investigation of COB?

"A. Very brief.

"Q. Tell me what the brief investigation was.

"A. We would attain [*sic*] copy of their balance sheet, make calls to their correspondents.

"Q. Who did that?

"A. Our credit department."

With respect to the participation of a confirming bank, Ray testified:

A. "The initial conversations concerned purchasing a commitment of COB. Our bank refused to do this and insisted that the credit be confirmed by a major bank. Our initial conversations were as to the credit standing of the takeout on the deal, where the money was coming from."

A. ". . . the transaction had been offered with the eventual funds coming from COB. We refused to handle it after a brief credit check, insisted that their credit be confirmed by a major bank. Subsequently Mr. Suh [of Balfour] asked is Security Pacific okay. They agreed. A meeting was set up to do the transaction and they asked that I join them for technical advice."

The majority opinion correctly describes what occurred when a hearing was held on June 25, 1981, concerning the need for a temporary restraining order and order to show cause regarding a preliminary injunction.

DISCUSSION

I.

On this appeal, plaintiff COB argued that defendant FAB's participation in events culminating in plaintiff's issuance of a letter of credit in Balfour's favor warranted the exercise of a California court's limited jurisdiction over defendant FAB. I disagree.

Initially, I note the appropriate standard of review. Inasmuch as defendant FAB moved to quash service of process, plaintiff COB bore the burden of proof at trial; it was incumbent upon plaintiff to establish the existence of the court's jurisdiction by a preponderance of the evidence. (*Thomas J. Palmer, Inc.* v. *Turkiye Is Bankasi A.S.* (1980) 105 Cal.App.3d 135, 146 [164 Cal.Rptr. 181].) On review, the finding of the trial court will be upheld

if the evidence, when viewed most favorably to the defendant, provides substantial support for the finding. (*Arnesen* v. *Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 995 [107 Cal.Rptr. 744].)

Pursuant to Code of Civil Procedure section 410.10, California courts are entitled to exercise jurisdiction over nonresidents on any basis which is not inconsistent with either the United States or California Constitutions. Thus, section 410.10 manifests the Legislature's intent that the jurisdiction of California courts be limited only by concerns of constitutional magnitude. (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893 [80 Cal.Rptr. 113, 458 P.2d 57].) The exercise of personal jurisdiction over a nonresident is proper so long as the nonresident's contacts with the forum state are not so minimal as to offend "traditional notions of fair play and substantial justice." (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316-317 [90 L.Ed. 95, 101-103, 66 S.Ct. 154]; *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264].)

In *Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d 893, the California Supreme Court articulated the requisites for the existence of "general" or "limited" jurisdiction. In either case, "[a] defendant not literally 'present' in the forum state may not be required to defend itself in that state's tribunals unless the 'quality and nature of the defendant's activity' in relation to the particular cause of action makes it fair to do so. [Citations omitted.] Such a defendant's activity must consist of 'an act done or transaction consummated in the forum State' or 'some [other] act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.' [Citations omitted.] Furthermore, unless the defendant's forum-related activity reaches such extensive or wide-ranging proportions as to make the defendant sufficiently 'present' in the forum state to support jurisdiction over it concerning causes of action which are unrelated to that activity [citations omitted], the particular cause of action must arise out of or be connected with the defendant's forum-related activity." (*Id.,* at p. 898-899.)

The exercise of jurisdiction is also considered reasonable on the basis of a defendant's intentional acts which, although accomplished outside California, cause exceptional effects for which the state has provided special regulation or which invoke both the protections and benefits of state resources. (*Thomas J. Palmer, Inc.* v. *Turkiye Is Bankasi A.S.* (1980) 105 Cal.App.3d 135, 152 [164 Cal.Rptr. 181]; *Quathone* v. *Superior Court* (1975) 44 Cal.App.3d 296, 306 [118 Cal.Rptr. 548].) The presence of an "effect" alone, however, may not be sufficient to satisfy constitutional concerns. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 446 [128 Cal.Rptr.

34, 546 P.2d 322].) An "effect" will form the basis for jurisdiction only where reasonable (*Thomas J. Palmer, Inc.* v. *Turkiye Is Bankasi A.S.*, *supra*, 105 Cal.App.3d 135); in the absence of "traditional notions of fair play and substantial justice," there can be no doubt that the exercise of jurisdiction would be unreasonable. (*Id.*, at p. 153, quoting from *Internat. Shoe Co.* v. *Washington*, *supra*, 326 U.S. 310, 316-317.) Moreover, we look not to the "performance of the plaintiff" in California, but rather, to the quality and nature of a defendant's activities in this state. (*Floyd J. Harkness Co.* v. *Amezciea* (1976) 60 Cal.App.3d 687 [131 Cal.Rptr. 667]; *Cornell University Medical College* v. *Superior Court* (1974) 38 Cal.App.3d 311, 316 [113 Cal.Rptr. 291].)

In view of the above, the trial court correctly concluded the necessary "minimum contacts" were absent. I note that this analysis is addressed only to the parameters of that transaction which forms the basis of COB's complaint. References made by plaintiff on appeal to transactions not addressed in the complaint are outside the proper scope of inquiry.

Having studied the record at length, I agree with the trial court's assessment, i.e., the evidence sufficiently supports a finding that FAB's participation in plaintiff COB's letter of credit transaction was within the scope of "ordinary banking practice." An examination of the characteristics of a letter of credit transaction supports this conclusion.

California Uniform Commercial Code section 5103, subdivision (a) defines a "letter of credit" in pertinent part as "an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this division (Section 5103) that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." A bank issuing a letter of credit is an "issuer" (Cal. U. Com. Code, § 5103, subd. (c)); a "person who is entitled under [the] terms [of a letter of credit] to draw or demand payment" is a "beneficiary." (Cal. U. Com. Code, § 5103, subd. (d).) A "confirming bank . . . engages . . . that it will itself honor a credit already issued by another bank . . . ." (Cal. U. Com. Code, § 5103, subd. (f).)

Broadly defined, a letter of credit represents an agreement "by a bank . . . at the request of a customer that the issuer will honor drafts . . . upon compliance with the conditions specified in the credit." (*Wichita Eagle & Beacon Pub. Co.* v. *Pacific Nat. Bank of S.F.* (D.C.Cal. 1971) 343 F.Supp. 332, 337.) Primarily, it is used in international trade (Webster & Davis, *Bank Credit Plans: Innovations in Consumer Financing* (1968) 1 Loyola L.A. L.Rev. 49) "where much time necessarily elapses between the sale

and the receipt by a purchaser of the merchandise, during which interval great price changes may occur. Buyers and sellers struggle for the advantage of position. The seller is desirous of being paid as surely and as soon as possible, realizing that the vendee at a distant point has it in his power to reject on trivial grounds merchandise on arrival, and cause considerable hardship to the shipper. Letters of credit meet this condition by affording celerity and certainty of payment. Their purpose is to insure to a seller payment of a definite amount upon presentation of documents. The bank deals only with the documents. It has nothing to do with the quality of the merchandise. Disputes as to the merchandise shipped may arise and be litigated later between vendor and vendee, but they may not impede acceptance of drafts and payment by the issuing bank when the proper documents are presented." (*Johnston* v. *State Bank* (Iowa 1972) 195 N.W.2d 126, 130, quoting from *Hibernia Bank & Trust Co.* v. *J. Aron & Co.* (1928) 134 Misc. 18, 21-22 [233 N.Y.S. 486, 490-491].)

The financial arrangements behind the "buying and selling" may be coordinated by a "factor." California Civil Code section 2026 defines a "factor" as "an agent who, in the pursuit of an independent calling, is employed by another to sell property for him, and is . . . authorized to receive payment therefore from the purchaser." Balfour, in the instant case, acted as a factor; Balfour's services included arranging for two letters of credit to facilitate payment.

During his deposition, John Ray, senior vice president of FAB, described Balfour's role and the purpose for both letters of credit. According to Ray, "Balfour asked that we finance the purchase and sale of a machine. As a first step, a letter of credit was opened by COB confirmed by Security Pacific and sent to us for delivery to Balfour . . . . Balfour then asked that we pay for and finance the equipment that was to be delivered under the California Overseas Bank credit. To do that we opened a credit in favor of the supplier, a Norco Company, corporation . . . . We sent it to the French Bank of California for delivery to Norco. Subsequently they delivered the merchandise, presented the documents to the French Bank of California who in turn sent them to us for payment, and we paid it . . . ."

The nature of the transaction is, therefore, apparent. FAB performed as an issuer of one of the two letters of credit arranged by Balfour in order to facilitate the sale of equipment from Norco, its customer, to KSTAR, the buyer. The FAB letter of credit for $1,192,500 guaranteed that Balfour's payment to Norco, the original seller, by FAB would follow receipt of the requisite documents by the French Bank of California. The COB letter of credit, confirmed by Security Pacific, guaranteed that the buyer's payment

to Balfour of $1,342,500 would follow satisfaction of the conditions and receipt of the documents required by the COB letter of credit. Payment on the COB letter of credit, however, was not due until "180 days after negotiations of documents." It is of no surprise, therefore, that Balfour arranged with FAB for the latter to purchase the COB note at a discount; by so doing, Balfour avoided waiting six months for payment.

Plaintiff COB also seeks to establish the propriety of the trial court's jurisdiction by virtue of FAB's "purposefully [having] established a substantial business relationship with California . . . ," involving thereby "the benefits and protections of the laws of this state."

A similar proposal was recently refused by this district in *Thomas J. Palmer, Inc.* v. *Turkiye Is Bankasi A.S., supra,* 105 Cal.App.3d 135. In *Palmer,* the plaintiffs brought suit against a Turkish bank in connection with a transaction entailing a letter of guaranty and a letter of credit. The bank moved to quash service of process in that it had neither branches, offices, agents nor customers in California. Moreover, the Turkish bank had never retained agents, solicited business, advertised, owned realty or paid taxes in California. The Turkish bank's only connection with California was the maintenance of a bank account with an affiliate's bank in California. There, as here, the presence of a bank account in the forum state was insufficient to establish the court's general jurisdiction.

The *Palmer* court then concluded that limited jurisdiction was also unwarranted in the absence of any factual showing of wrongful conduct on the part of the Turkish bank. Similarly, I am unable to find evidence of any act in the facts of the case at bench sufficient to give rise to the court's limited jurisdiction. Contrary to plaintiff's basic contention, I find no evidence of any intentionally deceptive activity on the part of FAB which would establish the jurisdiction of California's courts in the manner considered sufficient to establish the court's jurisdiction over the defendant in *Quatrone* v. *Superior Court* (1975) 44 Cal.App.3d 296 [118 Cal.Rptr. 548]. From Ray's answers negating any contact between FAB and KSTAR, knowledge of a relationship between Norco and KSTAR or of information concerning the purchase or sale of the goods underlying the transaction, inferences of wrongdoing need not be drawn. Inasmuch as the primary obligation in a letter of credit transaction is between the issuer and beneficiary (*Wichita Eagle & Beacon Publishing Co.* v. *Pacific Nat. Bank of S.F., supra,* 343 F.Supp. 332), FAB's knowledge would primarily be expected to concern its customer, Balfour, the beneficiary of the FAB letter of credit, the seller, Norco, and the requisite documents. Once the issuer, FAB, had received the documents from Norco, payment was due. Even if the documents were

defective, absent any irregularity on their face, FAB was required to make payment. (Cal. U. Com. Code, § 5114, subd. (2)(a)). This is consistent with the well known rule that the issuer is bound to make payment upon presentation of drafts accompanied by the proper documentation, for banks "should not be embroiled in the disputes between the underlying participants." (*Courtaulds North American, Inc.* v. *N.C. Nat. Bank* (4th Cir. 1975) 528 F.2d 802, 805; *Johnston* v. *State Bank* (Iowa 1972) 195 N.W.2d 126, 130.) The involvement of the issuer is limited to documents, not merchandise. (*Thomas J. Palmer, Inc.* v. *Turkiye Is Bankasi A.S., supra*, 105 Cal.App.3d 135, 150.)

I find no greater merit in plaintiff's assertion that the court's limited jurisdiction may be based on the existence of a loan made by FAB to either COB or Security Pacific. While it is true Ray acknowledged "a loan would be established in Balfour's name until the documents could be sent back to Security Pacific and a formal commitment received from Security Pacific," Ray's statement addressed only an abstract extension of a commercial line of credit, rather than a "loan of money" wherein "*one delivers a sum of money* to another, and the latter agrees *to return* at a future time a sum equivalent to that which he borrowed . . . ." (Civ. Code, § 1912, italics added.) Moreover, FAB's intent is clarified by Ray's additional statement that upon Security Pacific's formal commitment to pay on the COB letter of credit, "[w]e would then purchase the formal commitment, liquidate the Balfour loan and create a loan in the name of Security Pacific." In view of the nature of the transaction, I cannot agree Ray's use of the word "loan" addresses the type of transaction characterized as a loan by our courts, for there was no "delivery of a sum of money to another under a contract to return at some future time an equivalent amount . . . ." (*Boerner* v. *Calwell Co.* (1978) 21 Cal.3d 37, 47 [145 Cal.Rptr. 380, 577 P.2d 200].) The sole case cited by plaintiff COB in support of its assertion, *E.F. Hutton & Co.* v. *Tourism and Development Corp.* (D.R.I. 1978) 455 F.Supp. 981, is inappropriate, for the loan transaction there was traditional in every sense. Thus, the transaction, had it been completed as planned, would have included the actual deliverance and return of borrowed funds. Moreover, the court based its finding of jurisdiction on the imputation to the non-forum state lender of the knowledge that "its rights in the various phases of [the] business venture, . . . , might well be determined . . ." in the forum state, inasmuch as the lender had the right to approve plans and specifications and benefit from a security interest. FAB's role as a "lender" differs in that it acquired no rights of approval or security interest in the underlying goods which would inure to its own benefit.

Ray clarified FAB's role in a later declaration when he explained "French American opened a commercial line of credit in the name of Security Pa-

cific. However, this line of credit was in favor of French American's customer Balfour and was to be used by Balfour in connection with the discounting of commercial paper for which Security Pacific was the obligor. French American did not actually extend a line of credit to Security Pacific." Thus, by virtue of all of the above, the trial court was correct in ruling plaintiff had not established the propriety of the court's exercise of limited jurisdiction over defendant FAB.

## II.

I find no stronger basis for the trial court's jurisdiction in plaintiff's second proffered theory; economic benefits derived by FAB from the instant transaction do not result from the type of acts subject to special regulation in California, i.e., the type of acts addressed by the court in *United California Bank* v. *First Bank of Oak Park* (1979) 98 Cal.App.3d 439 [159 Cal.Rptr. 607]. As previously discussed *ante,* FAB's actions were consistent with ordinary business practices. They are hardly synonymous with the wanton disregard for responsible banking practice illustrated by the foreign defendant bank in *United California Bank.* Unlike the defendant there who issued a certificate of deposit for use by one of its depositors despite knowledge that the certificate could be useless as security, FAB engaged in no activities other than those normally associated with the issuance of a letter of credit at the request of a factor. Jurisdiction by virtue of "special regulation" is, therefore, unwarranted.

## III.

I respectfully disagree with the majority conclusion that counsel for defendant FAB made an appearance on June 25, 1981, in the superior court which subjected his client to our jurisdiction.

The *June 25, 1981* proceedings were not conducted in open court but in the chambers of Honorable Robert I. Weil (Judge presiding in Department No. 85). The colloquy between court and all counsel at this hearing is contained in a little over 11 pages of a reporter's transcript of which only 29 lines (*equivalent to only 1 page*) consist of statements by FAB's counsel which were primarily in response to queries from the court.

It is significant that the hearing *solely* addressed an application by plaintiff COB for a temporary restraining order (TRO) pertaining to the payment of a letter of credit. The named defendants were Security Pacific National Bank (Security Pacific) and FAB. The record shows that Attorney Richard P.

Levy of Gibson, Dunn & Crutcher appeared for FAB, while other counsel appeared for the plaintiff COB and codefendant Security Pacific.

The clerk's transcript shows that a complaint for damages was filed contemporaneously with plaintiff COB's application for a TRO on the same date of the above mentioned hearing—on *June 25, 1981*. Judge Weil, at the outset of the in chambers hearing, stated for the record that, *"I hustled all of you in here,* frankly, because I just got finished with the Continental case, although I am not finished with them yet, because they will be coming back, and *I wanted to find out exactly what is involved in this case. So perhaps counsel for the plaintiff can tell me."* (Italics added.)

Following Judge Weil's statement, counsel for COB explained the situation. Thereafter, counsel for French American, responding to an inquiry by the court in its obvious effort to find out what the matter was all about for the sole reason of determining whether or not a TRO should be issued, in substance, conveyed the thought that he knew of no reason to have any TRO issued because of the sacrosanct position letters of credit are held by businesses worldwide. He also advised the court that FAB held the paper, "to the extent that any monies are paid to French American Bank, those monies will be kept or spent by a company that is a wholly-owned subsidiary of one of the, if not the largest banks in the world, as far as customer deposits are concerned, . . . ." Counsel for plaintiff COB complained that FAB presented the paper to COB directly rather than the confirming bank, Security Pacific.

The court then asked COB's counsel why damages were not an adequate remedy to the whole problem. COB's counsel stated that the problem "basically related to the question of interest insofar as the litigation is concerned" . . . "the difference between the judgment rate of interest and the market rate of interest." Whereby Judge Weil denied COB's application for a TRO.

The record also contains a reporter's transcript of the hearing conducted in open court before Honorable Dickran Tevrizian (Judge presiding in Department No. 83) on *December 21, 1981*. These proceedings involved a motion by FAB to quash the service of process for lack of jurisdiction. The same counsel who appeared for COB and FAB at the June 25, 1981, hearing in Judge Weil's chambers appeared for their respective clients at the December 21, 1981, hearing. Counsel argued all of the same jurisdictional issues before this court on appeal and the court granted FAB's motion to quash service of process for lack of jurisdiction.

At the December 21 hearing, when counsel for COB raised the issue as to whether or not FAB submitted to the jurisdiction of California courts by the appearance of its counsel at the June 25, 1981, hearing (in Judge Weil's chambers), Judge Tevrizian stated: "That was raised by an appearance that was made before Judge Weil, I believe it is, and I read the transcript and he didn't consider that to be a general appearance. He was very specific about the limited appearance that was made before him." FAB's counsel pointed out that, "With regard to the hearing [on June 25] and the alleged personal appearance, the fact is that no matter what you add to that, it makes no difference if I say that this is general or special. *The fact is that we were there on a four-hour notice to find out what the action was about.* We argued simply the temporary restraining order and not the merits of the case, which I believe is the dividing point with regard to this kind of a motion." (Italics added.) Thereafter, Judge Tevrizian found, "that French American Banking Corporation did not make a general appearance on June 25th, 1981."

The fact that FAB's counsel did not specifically state on the record at the June 25 hearing before Judge Weil that he was making a "special" appearance only, is of no significance whatsoever in the determination of whether a special or general appearance was in fact made. (See *Bank of America* v. *Harrah* (1952) 113 Cal.App.2d 639, 641 [248 P.2d 814].)

From information gleaned from the record on appeal and oral arguments, it is uncontradicted that Attorney Levy's presence at the June 25, 1981, hearing on COB's application before Judge Weil for a TRO was upon four hours' telephonic notice; that prior to the hearing, Attorney Levy had no relationship with, or knowledge of, FAB; that it was in response to a telephone request by FAB's outside counsel that Attorney Levy rushed to Judge Weil's chambers to obtain information on the TRO application; that he only had approximately four hours notice of the hearing; that Attorney Levy asked for no affirmative relief at any time during the brief "in-chambers" hearing and did no more than respond to Judge Weil's direct questions with his remarks totaling less than one page out of the entire transcript; and that it was several days after the TRO hearing that summons was served commencing the action.

Here, FAB is not attempting to avoid jurisdiction on purely dilatory or technical grounds. It objects to jurisdiction on fundamental constitutional issues involving state power under our federal system (See *Hanson* v. *Denckla* (1958) 357 U.S. 235, 251 [2 L.Ed.2d 1283, 1296, 78 S.Ct. 1228]) and has prevailed on those issues as previously discussed. To hold that FAB has submitted itself to the jurisdiction of California courts for the hypertechnical reason of FAB's counsel's failure at the June 25 hearing to mouth two

words—"special appearance"—would be grossly unfair, exalting form over substance, create a "catch 22" jurisdictional dilemma for any out-of-state litigant which may find itself in FAB's shoes under a similar set of circumstances, and set up a technical maneuver whereby an out-of-state litigant could be "mousetrapped" into submitting to the jurisdiction of California courts where clearly no other jurisdictional basis existed.

I am unaware of any statutory or binding case law authority which would compel a finding that FAB waived its right to contest California jurisdiction and submitted itself to the jurisdiction of California courts under the totality-of-the-circumstances described above. Accordingly, I cannot say that Judge Tevrizian abused his discretion by granting FAB's motion to quash service of process for lack of jurisdiction. Nor can I say, as a matter of law, that the appearance of Attorney Levy at the June 25 TRO hearing before Judge Weil constituted a general appearance submitting FAB to the jurisdiction of California courts.

Again, for the reasons stated, I would affirm the superior court's order granting FAB's motion to quash service of process for lack of jurisdiction.

Respondent's petition for a hearing by the Supreme Court was denied May 24, 1984. Kaus, J., did not participate therein.