[No. G017434. Fourth Dist., Div. Three. Oct. 13, 1995.]

ERNEST P. MANSOUR et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
RALPH EIDEM, JR., et al., Real Parties in Interest.

[No. G017528. Fourth Dist., Div. Three, Oct. 13, 1995.]

SUE ANNA CELLINI, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
RALPH EIDEM, JR., et al., Real Parties in Interest.

[No. G017555. Fourth Dist., Div. Three. Oct. 13, 1995.]

EMIL ASKEW, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
RALPH EIDEM, JR., et al., Real Parties in Interest.

COUNSEL

Call, Clayton & Jensen and Seth L. Liebman for Petitioners in No. G017434.

Post, Kirby, Noonan & Sweat, Gregory A. Post and Theresa M. Brehl for Petitioner in No. G017528.

Brown & Bain, Diane Madenci, Philip R. Higdon, Lane D. Oden, Luce, Forward, Hamilton & Scripps and Callie Bjurstrom for Petitioner in No. G017555.

No appearance for Respondent.

Callahan, Blaine & Williams, Daniel J. Callahan and Jim P. Mahacek for Real Parties in Interest.

OPINION

**RYLAARSDAM, J.**—Petitioners Ernest P. Mansour and the law firm of Mansour, Gavin, Gerlack & Manos Co. L.P.A. (MGGM), Sue Anna Cellini and Emil Askew separately moved to quash service of summons for lack of personal jurisdiction. The superior court denied each motion and the parties have petitioned this court to overturn the superior court's rulings. Since each petition arises from the same case and involves similar facts we consolidated the petitions for review. While real parties in interest Ralph Eidem, Jr., and Commercial Surety Bond Agency, Inc. (CSBA; collectively Eidem), attack the petitions on several grounds, the primary issues are whether Cellini and Askew waived their objections to California's jurisdiction over them by making general appearances in the action, and whether a party is subject to

suit in California because it belongs to a conspiracy and a coconspirator has committed forum-related acts which are alleged to be imputable to it.

## FACTS

Ralph Eidem is the president, chief executive officer and principal stockholder of CSBA, a California corporation which issues construction surety bonds. Mansour is an Ohio resident and licensed to practice law in that state. He is a member of MGGM, an Ohio law firm. Cellini is an Arizona resident married to Dando Cellini, former general counsel and executive vice-president of Pace American Group (PAG) and a director of PAG's wholly owned subsidiary, American Bonding Company, Inc. (ABC). Askew is a resident of Arkansas and formerly the president and a director of ABC.

PAG is a Delaware corporation which underwrites construction surety bonds through ABC. Both companies have their principal places of business in Tucson, Arizona. Until February 1994, Don Pace was PAG's president and chief executive officer.

Eidem sued petitioners and others for defamation and false light invasion of privacy. The complaint alleges: In 1989, PAG and Eidem agreed to restructure CSBA to transfer much of its California surety bond business to PAG and ABC. In return, Ralph Eidem received a 5 percent "override" on the bond premiums former CSBA entities paid to PAG and ABC. Eidem subsequently agreed to "gift" one-half the premium override to Don Pace. In late 1993, petitioners and several other defendants, most of whom were officers and directors of PAG and ABC, conspired to oust Don Pace as an officer of PAG. Pursuant to the conspiracy, Mansour prepared a report concluding Pace had engaged in unethical and illegal conduct which included receiving kickbacks from insurance agents. Persons reading the report understood the reference to insurance agents meant Eidem. In addition, Dando Cellini and other PAG officials repeated the false statements to others in California.

Petitioners moved to quash service. Each denied living, maintaining an office, doing business or owning property in California. Mansour declared his only communications concerning Eidem were with persons and entities in Arizona and he never caused another to speak or write about Eidem in California.

Respondent heard and denied each motion separately. As for Mansour and MGGM's motion, it concluded they did business here by preparing documents "that were to be complied with in California."

## DISCUSSION

### 1. Sufficiency of the Pleadings

█ Citing *Sherwood* v. *Superior Court* (1979) 24 Cal.3d 183 [154 Cal.Rptr. 917, 593 P.2d 862], Eidem contends petitioners failed to attach the superior court's orders denying their motions. In *Sherwood,* the Supreme Court held the record was insufficient to permit consideration of the petitioner's claim because he submitted only his motion and the real parties' opposition to it with the petition. (*Id.* at p. 187.) Here, each petitioner attached not only the moving papers and plaintiffs' opposition, but also transcripts of the hearings which contained the trial judge's rulings. In addition, Mansour and Cellini submitted the notices of the ruling on their motions. The record before us is sufficient to permit review of the superior court's orders. (*Id.* at p. 186.)

### 2. Clean Hands

█ Eidem also contends we should deny the petitions under the clean hands doctrine claiming each petitioner has made misrepresentations concerning the superior court proceedings. Each alleged misrepresentation involves a dispute over how the petitioners characterize what occurred in the lower court. Even assuming petitioners' characterizations of the superior court proceedings are not entirely accurate, they do not appear to be willful attempts to intentionally mislead this court. We decline to deny the petitions on this ground.

### 3. General Appearance

█ Eidem argues Cellini and Askew cannot challenge California's jurisdiction over them because their attorneys entered general appearances for them by assisting in the preparation of a joint case management statement and appearing at an evaluation hearing on their behalf. In addition, Eidem notes Cellini's attorney issued two deposition subpenas in her name.

█ A general appearance occurs where a party, either directly or through counsel, participates in an action in some manner which recognizes the authority of the court to proceed. It does not require any formal or technical act. (*Sanchez* v. *Superior Court* (1988) 203 Cal.App.3d 1391, 1397 [250 Cal.Rptr. 787]; *Creed* v. *Schultz* (1983) 148 Cal.App.3d 733, 740 [196 Cal.Rptr. 252]; see also Code Civ. Proc., § 1014.) "If the defendant 'raises any other question, or asks for any relief which can only be granted upon the hypothesis that the court has jurisdiction of his person, his appearance is

general . . . .' [Citation.]" (*California Overseas Bank* v. *French American Banking Corp.* (1984) 154 Cal.App.3d 179, 184 [201 Cal.Rptr. 400].)

▇ Cellini's attorney issued deposition subpenas to two doctors who treated Ralph Eidem. By initiating discovery unrelated to the issue of jurisdiction, she made a general appearance. (*Creed* v. *Schultz, supra,* 148 Cal.App.3d at pp. 739-740.)

An attorney's appearance for a party at a hearing can also result in a general appearance. (*Estate of Elftman* (1958) 160 Cal.App.2d 10, 12 [324 P.2d 977].) Counsel for Askew and Cellini participated in preparing a joint case management statement and appeared at and participated in an evaluation conference pursuant to local court rules. Both parties listed additional discovery they anticipated conducting before trial. At the evaluation hearing, Askew's attorney joined in the plaintiff's effort to continue the matter due to the petitions pending before this court. But once the trial court denied that request, counsel for both Askew and Cellini actively participated in the hearing. When the trial judge set a trial date, Cellini's counsel objected and unsuccessfully sought a later date to complete discovery. The mandatory settlement conference was set for September 15, 1995, at Askew's suggestion.

The case management evaluation procedure is intended to expedite the resolution of lawsuits by allowing the trial court to establish a schedule for discovery and law and motion matters, set a mandatory settlement conference and trial date and consider the possibility of using alternative dispute resolution methods. (Super. Ct. Orange County Rules, rules 444 & 445.) The process is thus premised on the trial court having jurisdiction over the parties participating in it. Askew and Cellini's responses on the case management statement and their active participation in the evaluation conference constitute a general appearance in the case. The mere fact Askew and Cellini had previously moved to quash service under Code of Civil Procedure section 418.10 and petitioned this court to overturn the denial of their motions did not grant them immunity from making a general appearance by their subsequent participation in the litigation.

The attorneys representing Askew and Cellini note they also represent other defendants in this litigation who did not object to California's exertion of jurisdiction over them. But they failed to limit their appearances to the other clients. (Cf. *Sanchez* v. *Superior Court, supra,* 203 Cal.App.3d at pp. 1395, 1399 [defendants' counsel appeared at plaintiff-initiated depositions, but made no representation regarding their appearance; no general appearance]; *Botsford* v. *Pascoe* (1979) 94 Cal.App.3d 62, 69 [156 Cal.Rptr. 177].

[counsel for parties named as Doe defendants in complaint who were also sued in a related cross-complaint initiated discovery identifying themselves only as attorneys for cross-defendants; no general appearance].)

We conclude Cellini and Askew waived their right to challenge the superior court's denial of their motions to quash service of summons by making general appearances in the action.

### 4. *Personal Jurisdiction*

■■■ Mansour and MGGM contend California lacks personal jurisdiction over them because they did not publish or cause the publication of any statements about Eidem in this state. Eidem argues Mansour and MGGM can be sued here because they belonged to a conspiracy and the forum-related acts of coconspirators are imputable to them. Alternatively, Eidem claims Mansour and MGGM committed acts which caused an effect in California and their acts were directed at this state.

■■■ California may exercise personal jurisdiction over a party "on any basis not inconsistent with" the state or federal Constitutions. (Code Civ. Proc., § 410.10.) Due process allows a state to exert its jurisdiction over a nonresident defendant only where it has sufficient contacts with the state such that maintenance of the suit will not offend traditional notions of fair play and substantial justice. (*Calder* v. *Jones* (1984) 465 U.S. 783, 788 [79 L.Ed.2d 804, 811-812, 104 S.Ct. 1482]; *International Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 101-102, 66 S.Ct. 154, 161 A.L.R. 1057].)

If a nonresident defendant's contacts with this state are extensive, wide-ranging, substantial, continuous and systematic, California may exercise jurisdiction over the defendant on all causes of action even if a claim does not arise out of or relate to the defendant's forum contacts. (*Helicopteros Nacionales de Colombia* v. *Hall* (1984) 466 U.S. 408, 414-415 [80 L.Ed.2d 404, 410-411, 104 S.Ct. 1868]; *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264].) ■■■ The record is devoid of any evidence indicating Mansour and MGGM have wide-ranging, systematic or continuous contacts with California permitting this state to exercise general jurisdiction over them.

■■■ California may still exercise specific jurisdiction over a nonresident defendant for a cause of action arising out of or relating to its acts, ties, or connection to this state. (*Helicopteros Nacionales de Colombia* v. *Hall, supra,* 466 U.S. at p. 414 [80 L.Ed.2d at pp. 410-411]; *Cornelison* v. *Chaney, supra,* 16 Cal.3d at pp. 147-148.) ■■■ Here, the question is whether the quality and nature of petitioners' forum-related activity in relation to Eidem's complaint is sufficient to permit California to exercise jurisdiction

over them. (*Helicopteros Nacionales de Colombia* v. *Hall, supra*, 466 U.S. at p. 414 [80 L.Ed.2d at pp. 410-411]; *Calder* v. *Jones, supra*, 465 U.S. at p. 788 [79 L.Ed.2d at pp. 811-812].) To prevail, Eidem must establish the causes of action arose out of an act committed or transaction consummated in California, or that petitioners performed some other act by which they purposefully availed themselves of the privilege of conducting activities within this state, thus invoking the benefits and protections of the state's laws. (*Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 474-475 [85 L.Ed.2d 528, 541-542, 105 S.Ct. 2174]; *Cornelison* v. *Chaney, supra*, 16 Cal.3d at p. 148; *Pennsylvania Health & Life Ins. Guaranty Assn.* v. *Superior Court* (1994) 22 Cal.App.4th 477, 481 [27 Cal.Rptr.2d 507].)

The record does not support the trial court's rulings on Mansour and MGGM's motion. Mansour did not produce any documents requiring compliance in California. He prepared an opinion letter addressed to Dando Cellini in Arizona concerning possible unethical and illegal activities by Pace and other PAG and ABC officers. Only Dando Cellini and other officers, directors and agents of PAG are alleged to have made defamatory statements in California. There are no similar allegations about Mansour. (See *Seagate Technology* v. *A.J. Kogyo Co.* (1990) 219 Cal.App.3d 696, 702-703 [268 Cal.Rptr. 586]; *Taylor-Rush* v. *Multitech Corp.* (1990) 217 Cal.App.3d 103, 114-118 [265 Cal.Rptr. 672].) MGGM's only relationship to the litigation is that Mansour prepared the report in his capacity as a member of the firm.

While Mansour and MGGM may have foreseen the allegedly defamatory statements might be published in California, that alone is not enough to subject them to personal jurisdiction in this state. "[F]orseeability of causing *injury* in another State . . . is not a 'sufficient benchmark' for exercising personal jurisdiction." (*Burger King Corp.* v. *Rudzewicz, supra*, 471 U.S. at p. 474 [85 L.Ed.2d at p. 542]; see also *World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286, 295-297 [62 L.Ed.2d 490, 500-502, 100 S.Ct. 559].)

Eidem argues the defendants belonged to a conspiracy and California can exercise jurisdiction over Mansour and MGGM by attributing to them the forum-related activity of other coconspirators. We reject this claim for two reasons.

First, Eidem failed to provide evidence supporting use of a conspiracy theory in this case. "[T]he bland allegation of conspiracy without a prima facie showing of its existence is insufficient to establish personal jurisdiction." (*Taylor-Rush* v. *Multitech Corp., supra*, 217 Cal.App.3d at p. 114.) A plaintiff "must allege specific facts warranting the inference that the defendants were members of the conspiracy, and 'come forward with some definite

evidentiary facts to connect the defendant with transactions occurring in [the forum state].'" (*Singer* v. *Bell* (S.D.N.Y 1984) 585 F.Supp. 300, 303, fns. omitted.)

Eidem's complaint is unverified and thus of no evidentiary value. (*Mihlon* v. *Superior Court* (1985) 169 Cal.App.3d 703, 710 [215 Cal.Rptr. 442].) In opposing Mansour and MGGM's motion, Eidem submitted declarations from Ralph Eidem and Don Pace. While both declarants purport to recite facts relating to the creation of the conspiracy and the forum-related acts of the other coconspirators, it is clear neither has personal knowledge of these matters. Mansour and MGGM filed detailed objections to real parties' declarations primarily on the grounds they lacked foundation, contained inadmissible legal and factual conclusions, were speculative and argumentative. These objections are meritorious. But when asked to rule on the objections the trial court declined to do so. The superior court's refusal to rule on the objections was erroneous.

In effect, Eidem alleges Mansour and MGGM conspired with others to oust an officer of a Delaware corporation with its principal place of business in Arizona. The alleged defamation of real parties was purely collateral to the objective of the conspiracy since the published statements on which they rely refer to Pace and his activities and identify Eidem and CSBA only as "insurance agents." Nothing in either the complaint or real parties' declarations suggests the existence of a conspiracy to publish allegedly defamatory statements about Eidem in California.

Second, even if Eidem had presented sufficient evidence of a conspiracy they still could not prevail. California does not recognize conspiracy as a basis for acquiring personal jurisdiction over a party. The cases expressly considering the issue have rejected it. (*Kaiser Aetna* v. *Deal* (1978) 86 Cal.App.3d 896, 901 [150 Cal.Rptr. 615] [action arising from fraudulent land transactions; "Allegations of conspiracy do not establish as a matter of law that if there is one resident conspirator, jurisdiction may be exercised over nonresident conspirators."]; *Kipperman* v. *McCone* (N.D.Cal. 1976) 422 F.Supp. 860, 873, fn. 14 [action involving illegal mail surveillance; applying California law; "personal jurisdiction over any non-resident individual must be premised upon forum-related acts personally committed by the individual. Imputed conduct is a connection too tenuous to warrant the exercise of personal jurisdiction."]; *Edmunds* v. *Superior Court* (1994) 24 Cal.App.4th 221, 233 [29 Cal.Rptr.2d 281] [legal malpractice action against nonresident attorney; allegations attorney participated in civil conspiracy did not establish personal jurisdiction because "the purposes of other parties in the particular transaction cannot be imputed to the defendant seeking to quash service"]; see also *Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc.*

(1969) 276 Cal.App.2d 610, 619-621 [81 Cal.Rptr. 320].) The only contrary decision is *Taylor-Rush* v. *Multitech Corp.*, *supra*, 217 Cal.App.3d 103. There, the court found the evidence insufficient to establish the existence of a conspiracy, but in dictum stated, ". . . the acts of a coconspirator within California may give rise to jurisdiction over a coconspirator in another state." (*Id.* at p. 114.)

While neither the United States nor the California Supreme Court has expressly considered the issue, both focus on an individual defendant's forum-related activity when deciding whether personal jurisdiction exists. *Calder* v. *Jones*, *supra*, 465 U.S. 783 held California could assert jurisdiction over the nonresident employees of a national magazine who wrote and edited an allegedly defamatory article about a California plaintiff, because their "intentional and allegedly tortious actions were expressly aimed at California." (*Id.* at p. 789 [79 L.Ed.2d at p. 812].) But *Calder* agreed defendants' "contacts with California are not to be judged according to their employer's activities," since "[e]ach defendant's contacts with the forum State must be assessed individually." (*Id.* at p. 790 [79 L.Ed.2d at p. 813]; see also *Bankers Life & Casualty Co.* v. *Holland* (1953) 346 U.S. 379, 384 [98 L.Ed. 106, 112, 74 S.Ct. 145] [rejecting an attempt to employ a conspiracy claim to establish venue, characterizing the argument as "frivolous albeit ingenious"].)

In *Sibley* v. *Superior Court* (1976) 16 Cal.3d 442 [128 Cal.Rptr. 34, 546 P.2d 322], the California Supreme Court held this state could not exert personal jurisdiction over a Florida guarantor of a Georgia corporation's contractual obligation to a California resident. "[W]hile other parties involved in this action had considerable contacts with California, there is no indication that petitioner intended to conduct business or in any other way directly or indirectly gain from dealings in this state: the purpose of other parties cannot be imputed to petitioner for the purpose of assuming personal jurisdiction over him." (*Id.* at pp. 447-448.) Thus, we reject the use of a conspiracy theory to exert personal jurisdiction over Mansour and MGGM.

Alternatively, Eidem argues Mansour and MGGM are subject to California's jurisdiction because their acts either caused effects in or were directed at this state. Neither argument has merit.

█ A state can exert jurisdiction over a nonresident who commits an act elsewhere which causes an effect in the state. (*Sibley* v. *Superior Court*, *supra*, 16 Cal.3d at pp. 445-446.) But merely causing an effect in the forum is not sufficient. (*Jamshid-Negad* v. *Kessler* (1993) 15 Cal.App.4th 1704, 1708 [19 Cal.Rptr.2d 621]; *Wolfe* v. *City of Alexandria* (1990) 217 Cal.App.3d 541, 547 [265 Cal.Rptr. 881].) "[I]t is reasonable to exercise jurisdiction on the basis of the defendant intentionally causing 'effects in the

state by an omission or act done elsewhere' whenever (a) the effects are of a nature 'that the State treats as exceptional and subjects to special regulation,' or (b) the defendant has, in connection with his causing such effects in the forum state, invoked 'the benefits and protections of its laws.' " (*Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296, 306 [118 Cal.Rptr. 548].)

 This lawsuit involves common law defamation and false light invasion of privacy claims. Eidem cites no authority suggesting the defendants' allegedly tortious conduct was subjected to special regulation. And as just discussed, Mansour and MGGM did not invoke the benefits or protections of California law in connection with their out-of-state actions. Eidem's reliance on *Calder* v. *Jones, supra,* 465 U.S. 783 is unavailing. There two Florida residents wrote and edited an allegedly defamatory article about a California resident for a national magazine with extensive circulation here. In this case, Mansour prepared an allegedly false report about the potentially criminal activities of an Arizona corporate executive that only inferentially refers to plaintiffs.

Finally, there is also no evidence Mansour and MGGM purposefully directed their activities towards California. (See *Southeastern Express Systems* v. *Southern Guaranty Ins. Co.* (1995) 34 Cal.App.4th 1, 6 [40 Cal.Rptr.2d 216].) Eidem cites *Burger King Corp.* v. *Rudzewicz, supra,* 471 U.S. 462 in support of this theory. There the Supreme Court held a Florida restaurant corporation could sue a Michigan resident for allegedly breaching a comprehensive franchise agreement in Florida, finding the defendant "established a substantial and continuing relationship with Burger King's Miami headquarters, received fair notice from the contract documents and the course of dealing that he might be subject to suit in Florida . . . ." (*Id.* at p. 487 [85 L.Ed.2d at p. 550].) Here, the same is not true.

The petition of Mansour and MGGM is granted. Let a writ of mandate issue directing the superior court to vacate its order denying Mansour and MGGM's motion to quash and enter a new order granting the motion and dismissing the action as to them. Cellini and Askew's petitions are denied.

Sills, P. J., and Sonenshine, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied December 14, 1995.