[No. B149382. Second Dist., Div. Four. Nov. 26, 2001.]

NAM TAI ELECTRONICS, INC., Plaintiff and Appellant, v.
JOE TITZER, Defendant and Respondent.

1302

**COUNSEL**

Kirkpatrick & Lockhart, Robert E. Feyder and Michael J. Quinn for Plaintiff and Appellant.

Carroll & Werner and Lee G. Werner for Defendant and Respondent.

## OPINION

CURRY, J.—This is an appeal from an order of dismissal following the grant of respondent Joe Titzer's motion to quash service of process on a complaint filed by appellant Nam Tai Electronics, Inc. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The essential facts are not in dispute. Appellant is a consumer electronic products manufacturer incorporated under the laws of the British Virgin Islands and based in Hong Kong. Appellant's stock is publicly traded in the United States on the NASDAQ National Market System. Respondent is an individual residing in Colorado.

Respondent, using seven different aliases, posted 246 messages on Yahoo! Internet message boards, some of which were devoted to discussions of appellant's stock. Yahoo! is a California corporation based in Santa Clara, California. In order to avail himself of the opportunity to post on a Yahoo! message board, respondent was required to register a nickname or alias known as a Yahoo! ID, and agree to Yahoo!'s terms of service. The terms of service include a promise not to post any content that is unlawful, defamatory, libelous or otherwise objectionable. The terms of service further state that the relationship between the person registering and Yahoo! shall be governed by the laws of the State of California, and that both agree to submit to the personal and exclusive jurisdiction of the California courts.

Appellant contends that at least three of the messages posted by respondent were false, defamatory, misleading, or otherwise unlawful. The messages at issue stated that appellant had colluded with other companies to win contracts in restraint of free trade and that it was losing business to another China-based electronics manufacturing firm. In July 2000, appellant filed a complaint for libel, trade libel, and violations of Business and Professions Code section 17200 against the unknown author of the three messages. After some investigation, appellant learned that respondent was the author, and the complaint was amended to add him as the true defendant. Respondent was personally served with the complaint in Colorado in December 2000, and immediately moved to quash for lack of personal jurisdiction. Hearing was set for March 2, 2001.

On February 15, 2001, counsel for respondent filed a status conference questionnaire which stated respondent had specially appeared and filed a motion to quash to be heard on March 2. At the status conference that was attended by counsel for both sides, the court set a trial date and final status conference date.

At the subsequent hearing on the motion to quash, the court granted the motion. The court found that specific jurisdiction could be based on the fact that respondent "derived benefit from California" by having "an account contract with Yahoo!, a California-based Internet company, that permitted him to post messages on a Yahoo!-maintained bulletin board." Nevertheless, the court concluded that "while specific jurisdiction could be extended over [respondent] it would not comport with traditional notions of fair play and substantial justice to do so," explaining at length why it believed this was so: "1. [Appellant] is not a California resident. It filed suit in California to conveniently obtain subpoena power over Yahoo!, which it then used to compel Yahoo! to disclose the name of the person who posted the alleged defamatory messages on the Yahoo! bulletin board devoted to [appellant] corporation. [¶] 2. [Respondent's] messages did not have a peculiar California impact. [Respondent's] messages posted to the bulletin board were disseminated world-wide. [Respondent's] messages, in other words, were not California-directed and had no peculiar impact on California residents. . . . [¶] 3. That the Yahoo! employees who maintained the electronic bulletin board are located in California is incidental. The Yahoo!-maintained bulletin board is part of a world-wide communications network that is accessible to any Internet user. The bulletin board is interactive: messages may be posted on it from any Internet portal by a Yahoo! account subscriber. [¶] 4. [Respondent] accessed and posted to the bulletin board from outside California. [¶] [5.] [Respondent] is an individual and resides in Colorado. [Respondent] using keystrokes from his computer entered an account contract with Yahoo! over the Internet. He posted the 246 messages to Yahoo!-maintained bulletin boards, including the three that are allegedly defamatory toward [appellant], from a computer terminal in Colorado. He has not conducted any commercial activities in California, and owns no property in California."

The court also ruled that respondent did not waive his right to challenge jurisdiction by filing the status conference questionnaire or by participating in the status conference because (1) the status conference was a matter of routine set by the court's staff and when counsel for respondent called to seek a continuance he was wrongly informed by the courtroom assistant that it could not be continued; (2) counsel alerted the court that respondent was making a special appearance to challenge jurisdiction; and (3) the court agreed that counsel could make the appearance without waiving jurisdiction.

Once service was quashed as to respondent, the complaint was dismissed because there were no remaining defendants. Appeal was taken from the order quashing service and dismissing the complaint.

## DISCUSSION

## I

Appellant contends that the order quashing service and dismissing for lack of personal jurisdiction should be reversed for two reasons: (1) respondent's actions in filing a status conference questionnaire and appearing at the status conference constituted a general appearance; and (2) by repeatedly interacting with a Web site maintained by a California corporation, respondent purposefully availed himself of the benefits of the forum, subjecting himself to jurisdiction here.

█ The parties are in agreement that a general appearance need not be a formal, technical step or act. "What is determinative is whether defendant takes a part in the particular action which in some manner recognizes the authority of the court to proceed." (*Sanchez v. Superior Court* (1988) 203 Cal.App.3d 1391, 1397 [250 Cal.Rptr. 787].) "The appearance will be considered 'general' in nature if the defendant acts in a manner, 'showing of a "purpose of obtaining any ruling or order of the court going to the merits of the case".' " (*California Overseas Bank v. French American Banking Corp.* (1984) 154 Cal.App.3d 179, 184 [201 Cal.Rptr. 400].) "In order to determine whether counsel's remarks constitute a general or a special appearance, we look not to whether a party expressed an intent that the appearance be considered general or special, but rather to the 'character of the relief asked.' [Citation.] If the defendant 'raises any other question, or asks for any relief which can only be granted upon the hypothesis that the court has jurisdiction of his person, his appearance is general . . . .' [Citation.]" (*Ibid.*) In *California Overseas Bank,* for example, counsel for the defendant made an appearance at a hearing on a request for a temporary restraining order. "Rather than confining his remarks to a denial of the court's jurisdiction over [the defendant] or simply to clarifications of fact in order to assist the court, counsel addressed the propriety of the issuance of the temporary restraining order and, thus, [the defendant's] right to payment [on a letter of credit]." (*Id.* at p. 184.) Since the underlying suit involved that question, the court could not help but conclude "that counsel addressed the merits of the case when he opposed the temporary restraining order. Having addressed the merits of the case, [the defendant] submitted itself to the jurisdiction of the court." (*Id.* at p. 185.)

█ Appellant's principal authority for the proposition that filing a status conference questionnaire and appearing at a status conference constitutes a general appearance is *Mansour v. Superior Court* (1995) 38 Cal.App.4th 1750 [46 Cal.Rptr.2d 191]. In that case, separate attorneys represented two

out-of-state defendants as well as some in-state defendants. The attorneys for both out-of-state defendants assisted in the preparation of a joint case management statement and appeared at an evaluation hearing. The attorney for one of these defendants also issued deposition subpoenas unrelated to the issue of jurisdiction, an action which, the court held, was sufficient in and of itself to constitute a general appearance. (*Id.* at p. 1757.) As to the other defendant, the court held that his attorney's assistance in the case management statement and appearance at the hearing alone were sufficient to invoke jurisdiction. The court explained that the case management evaluation procedure established a schedule for discovery and law and motion, and set a date for the mandatory settlement conference and trial. The court noted that the attorney listed the discovery he anticipated conducting on behalf of his clients, including the out-of-state client, and actively participated in the hearing by suggesting a date for the mandatory settlement conference. (*Ibid.*)

While there are some similarities, we believe that the status conference differs in significant respects from the evaluation hearing at issue in *Mansour*. The point of a status conference is, literally, to keep the trial court apprised of the status of the myriad cases on its calendar. Failure to attend can result in sanctions being assessed directly against counsel. (Super. Ct. L.A. County, Local Rules, rule 7.13.) Progress might be made at a status conference in scheduling discovery and setting dates for trial and the mandatory settlement conference, but that need not necessarily occur. (*Id.*, rule 7.9(b) ["At the first status conference, . . . the Court may make orders concerning[] the following specific issues [including discovery timing and settlement conference and trial dates] (although some may be reserved for subsequent conferences)"].) In the status conference questionnaire and at the hearing, counsel for respondent did nothing more than inform the court about the case's current status—that respondent had been served but that he was moving to quash. At the hearing, once the topic moved from the motion to quash to damages and discovery, counsel for appellant monopolized the discussions with the court. The only comment made by respondent's counsel was in response to an inquiry by the court as to whether respondent would be conducting any type of discovery if jurisdiction were ultimately established. Counsel said: "If in fact we are obligated to defend in California, then I imagine that we are going to be doing some extensive discovery." The trial court then, on its own, set some tentative dates for trial and a final status conference without input from respondent's counsel. On these facts, we do not see how it can be said that respondent recognized the authority of the court to proceed against him or sought any type of relief based on the court's jurisdiction over him. While we agree it would have been better practice to postpone the status conference when the sole defendant submits a motion to quash based on lack of personal jurisdiction, we do not believe appearance at

a hearing whose purpose is to inform the court of the status of the case should be deemed a general appearance.

## II

■ We now turn to the question of whether jurisdiction should have been exercised over respondent without regard to whether he made a general appearance. ■ It is well recognized that "California may exercise personal jurisdiction over a party 'on any basis not inconsistent with' the state or federal Constitutions. (Code Civ. Proc., § 410.10.) Due process allows a state to exert its jurisdiction over a nonresident defendant only where it has sufficient contacts with the state such that maintenance of the suit will not offend traditional notions of fair play and substantial justice. (*Calder* v. *Jones* (1984) 465 U.S. 783, 788 [79 L.Ed.2d 804, 811-812, 104 S.Ct. 1482]; *International Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 101-102, 66 S.Ct. 154, 161 A.L.R. 1057].)" (*Mansour v. Superior Court, supra*, 38 Cal.App.4th at p. 1758.)

"If a nonresident defendant's contacts with this state are extensive, wide-ranging, substantial, continuous and systematic, California may exercise jurisdiction over the defendant on all causes of action even if the claim does not arise out of or relate to the defendant's forum contacts." (*Mansour v. Superior Court, supra*, 38 Cal.App.4th at p. 1758.) No one suggests that respondent's contacts with California were wide-ranging, systematic or continuous, as to permit the exercise of general jurisdiction over him.

This leaves the issue of whether the exercise of specific jurisdiction over respondent would be appropriate. ■ "California may . . . exercise specific jurisdiction over a nonresident defendant for a cause of action arising out of or relating to its acts, ties, or connection to this state." (*Mansour v. Superior Court, supra*, 38 Cal.App.4th at p. 1758.) The factors to be considered are "whether the quality and nature of [respondent's] forum-related activity in relation to [appellant's] complaint is sufficient to permit California to exercise jurisdiction over [him.] [Citations.] To prevail, [appellant] must establish the causes of action arose out of an act committed or transaction consummated in California, or that [respondent] performed some other act by which [he] purposefully availed [himself] of the privilege of conducting activities within this state, thus invoking the benefits and protections of the state's laws." (*Id.* at pp. 1758-1759.)

" '[O]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal

jurisdiction would comport with "fair play and substantial justice." ' [Citations.] Courts may evaluate the burden on the defendant of appearing in the forum, the forum state's interest in adjudicating the claim, the plaintiff's interest in convenient and effective relief within the forum, judicial economy, and 'the "shared interest of the several States in furthering fundamental substantive social policies." ' " (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 447-448 [58 Cal.Rptr.2d 899, 926 P.2d 1085].)

In *Jewish Defense Organization, Inc. v. Superior Court* (1999) 72 Cal.App.4th 1045 [85 Cal.Rptr.2d 611] (*JDO*), the court considered whether a New York resident who posted several allegedly libelous statements on Web sites through Internet providers with offices in California was amenable to suit in California. The court started with some basic principles: "In tort cases, the 'purposeful availment' requirement for specific jurisdiction can be satisfied by the 'effects test,' set out in *Calder v. Jones*[, *supra,*] 465 U.S. 783 . . . . [Citation.] 'Under *Calder*, personal jurisdiction can be based upon: "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state." ' " (*JDO, supra,* at p. 1057, quoting *Panavision Intern., L.P. v. Toeppen* (9th Cir. 1998) 141 F.3d 1316, 1321.)

■ The court in *JDO* also recited the general rule which applies in publication of libel cases: " ' "[T]he likelihood that an offending publication will enter a forum is [not] a fair measure of the reasonableness of the exercise of jurisdiction over a publisher. The nature of the press is such that copies of most major newspapers will be located throughout the world, and we do not think it consistent with fairness to subject publishers to personal jurisdiction solely because an insignificant number of copies of their newspapers were circulated in the forum state. In a defamation case, therefore, the appropriate jurisdictional analysis should be to determine whether or not it was foreseeable that a risk of injury by defamation would arise in the forum state." ' " (*JDO, supra,* 72 Cal.App.4th at p. 1058, quoting *Evangelize China Fellowship, Inc. v. Evangelize China Fellowship* (1983) 146 Cal.App.3d 440, 447 [194 Cal.Rptr. 240].) For purposes of widespread publications, " '[i]t is reasonable to expect the bulk of the harm from defamation of an individual to be felt at his domicile.' " (*JDO, supra,* at p. 1058, quoting *Gordy v. Daily News, L.P.* (9th Cir. 1996) 95 F.3d 829, 833.)

The court in *JDO* looked at whether California could be considered the place of injury under the above rules, and concluded it could not: "[The plaintiff] failed to provide sufficient evidence to establish that it was foreseeable that a risk of injury by defamation would arise in California." (*JDO,*

*supra,* 72 Cal.App.4th at p. 1059.) Not only did he fail to establish residence in California, "[the plaintiff] failed to establish he had any clients in California, or that the alleged defamatory statements herein would impact a business interest or reputation in California. . . . [¶] There is an insufficient basis in this record to conclude that California is [the plaintiff's] principal place of business, or that the alleged defamation was targeted at California or would cause the brunt of the harm in California. Accordingly, there is insufficient evidence showing defendants' minimum contacts with California under the analysis set out in cases dealing with defamation by nonresidents." (*Ibid.,* fn. omitted.)

█ Turning to the question of whether there should be different rules for libels spread via the Internet, the court in *JDO* quoted with approval a lengthy discussion by a Pennsylvania district court of the special problems created by the new technology: " 'The Internet makes it possible to conduct business throughout the world entirely from a desktop. With this global revolution looming on the horizon, the development of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its infant stages. The cases are scant. Nevertheless, our review of the available cases and materials reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. [Citation.] At the opposite end are situations where a defendant has simply posted information on an Internet Web site that is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. [Citation.] The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.' " (*JDO, supra,* 72 Cal.App.4th at p. 1060, quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* (W.D.Pa. 1997) 952 F.Supp. 1119, 1123-1124.)

█ The court in *JDO* concluded that under that analysis the defendants' conduct in registering plaintiff's name as a domain name and posting passive Web sites on the Internet was not sufficient to subject the defendants to jurisdiction in California. (*JDO, supra,* 72 Cal.App.4th at p. 1060.)

Appellant would distinguish *JDO* on the ground that respondent did not merely maintain a passive Web site, but that he affirmatively registered aliases and posted almost 250 messages on Yahoo!'s "California-maintained" Web site. Appellant misses the point. The issue is not whether the company that makes the Web sites available is incorporated or based in California. As the courts recognize, an Internet company of Yahoo!'s type may be based anywhere in the world. The determinative question is whether the Web sites themselves are of particular significance to California or Californians such that the user has reason to know the posting of a message will have significant impact in this state. Although we presume respondent's messages were available to Californians or anyone else with access to the Internet, appellant presented no evidence to suggest that respondent's messages or the Web sites on which they were posted were directed at Californians or disproportionately likely to be read by residents of this state. Alternatively, appellant presented no evidence to suggest that its relationships with residents of California were of particular importance to its business and likely to be impacted negatively by the messages posted on the Web sites.

Appellant points to Yahoo!'s terms of service agreement, which states that the relationship between Yahoo! and the registered user "shall be governed by the laws of the State of California without regard to its conflict of law provisions" and that "[y]ou and Yahoo agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, California." The Supreme Court has held that there is no public policy reason "why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length" and that "forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495-496 [131 Cal.Rptr. 374, 551 P.2d 1206].) Even where a forum selection clause appears in an adhesion contract, it may be enforceable "as long as the clause provided adequate notice to the defendant that he was agreeing to the jurisdiction cited in the contract." (*Hunt v. Superior Court* (2000) 81 Cal.App.4th 901, 908 [97 Cal.Rptr.2d 215].) But to be valid, a forum selection clause "must be clear and unambiguous in designating a forum as exclusive and mandatory . . . ." (*CQL Original Products, Inc. v. National Hockey League Players' Assn.* (1995) 39 Cal.App.4th 1347, 1358 [46 Cal.Rptr.2d 412]; *Hunt v. Superior Court, supra,* 81 Cal.App.4th at p. 908, fn. 5.)

Yahoo!'s terms-of-service agreement represents a typical adhesion contract, affording users who wish to register and post a message no opportunity

to negotiate. It may nevertheless be enforced, but only if it clearly and unambiguously advises registered users that they are agreeing to litigate certain disputes in California. The language on which appellant seeks to rely appears on its face to govern litigation between registered users and Yahoo!—not registered users and third parties. Accordingly, the fact that respondent may have agreed to the terms of service cannot, by itself, justify subjecting him to California jurisdiction for purposes of the present lawsuit.[1]

In its reply brief, appellant seeks to rely on a new authority, *Pavlovich v. Superior Court* (2001) 91 Cal.App.4th 409 [109 Cal.Rptr.2d 909], but we believe that case supports our view. In that case, the defendant, an Indiana resident, posted a program on the Internet that misappropriated the plaintiff's trade secrets and permitted individuals to pirate movies from digital versatile discs (DVD's). Preliminary findings indicated that the defendant was a leader in the "open source" movement that advocated making as much material as possible freely available over the Internet, and that the defendant was predominately interested in assisting people to copy DVD movies. (*Id.* at p. 413.) The appellate court sustained a finding of sufficient minimum contacts with the state to justify exercise of jurisdiction in part on the fact that defendant "knew that California is commonly known as the center of the motion picture industry, and that the computer industry holds a commanding presence in the state" and "knew, or should have known, that the DVD republishing and distribution activities he was illegally doing and allowing to be done through the use of his Web site, while benefiting him, were injuriously affecting the motion picture and computer industries in California." (*Id.* at pp. 417, 418.)

The decision in *Pavlovich* was based on California's well-known distinction of being the center of the nation's motion picture and entertainment-related computer industry. The fact that the defendant's actions were particularly threatening to those industries and that the plaintiff was involved in that industry gave the state a unique interest in overseeing the litigation. Here, by contrast, appellant can only point to the fact that its stock was publicly traded on NASDAQ and that some of its potential investors might have come from California because it is "one of the most populous states in the Union" with "established business and financial markets in major metropolitan areas such as Los Angeles, San Francisco, and the Silicon Valley." The fact that California is a potential source of investors does not distinguish

[1]We do not mean to imply that an agreement of this sort should be completely disregarded where a nonparty is seeking to establish that a defendant has sufficient minimum contacts with the state to justify the exercise of personal jurisdiction. The fact that a party has agreed on one or more occasions to litigate in California for some purposes might tip the balance in favor of a finding of personal jurisdiction if other significant contacts exist.

this state from any other state where potential investors might be located. It does not justify the exercise of jurisdiction in this instance.

The parties debate whether review of the trial court's decision should be by way of the substantial evidence test or independent review. Under either test respondent would prevail, because we agree with the trial court that appellant has failed to present persuasive evidence of a relationship between this state and the injury sufficient to justify the exercise of personal jurisdiction over respondent under concepts of fair play and substantial justice.

DISPOSITION

The order is affirmed.

Vogel (C. S.), P. J., and Epstein, J., concurred.