Filed 6/17/22  K.J.T. v. Tzankov CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| K.J.T., as Trustee, etc. et al., | |
| Plaintiffs and Respondents, | E075938 |
| v. | (Super.Ct.No. EAPVS2000004) |
| VICTOR R. TZANKOV, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Tara Reilly, Judge.  Affirmed.

Victor R. Tzankov, in pro. per., for Defendant and Appellant.

No appearance for Plaintiffs and Respondents.

On February 25, 2020, the trial court granted a temporary elder abuse protective order (Welf. & Inst. Code,[1] § 15657.03) against defendant and appellant Victor

---

[1]  All subsequent statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

1

Tzankov (Tzankov). Tzankov filed a motion to quash based upon a lack of personal jurisdiction, and the trial court denied the motion. The trial on the five-year protective order was set for July 27, 2020. On the morning of July 27, 2020, Tzankov was arrested "and charged criminally with elder abuse and a few other charges." On July 27, 2020, the trial court removed the trial on the protective order from the active trial calendar, set a trial readiness conference for October 15, 2020, and extended the temporary protective order to October 19, 2020.

Tzankov asserts the trial court erred by (1) denying his motion to quash; (2) repeatedly extending the temporary protective order; (3) setting the trial readiness conference for October 15, 2020; (4) permitting an attorney to make a telephonic appearance; and (5) not requiring trial briefs to be filed. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

On February 21, 2020, B.T.'s son, plaintiff and respondent K.J.T. (Son1), requested an elder abuse protective order against Tzankov, protecting B.T.; B.T.'s adult son K.T. (Son2); and Son2's wife. Tzankov was B.T.'s live-in caretaker for over 15 years.[2] Son1 asserted that, over the years, Tzankov "used guilt and intimidation" to gain control of B.T.'s finances. B.T.'s money was used to purchase Tzankov a $77,000 motorhome and three Audi sedans. In January 2020, Tzankov allegedly stole $10,000 in cash from B.T.'s safe. Tzankov was the beneficiary of a $100,000 life insurance policy on B.T.'s life.

---

[2] Tzankov asserted he was married to B.T. However, B.T. was legally married to her sons' father, although living apart from him.

2

On January 24, 2020, B.T. called Son1, who is a physician, and complained of feeling dizzy and feverish and having low blood pressure. Son1 told B.T. to go to the emergency room. Tzankov delayed B.T. going to the hospital by one day. When B.T. arrived at the hospital, she had "signs of life threatening sepsis/bacteremia, pneumonia, and . . . dangerously altered cardiac rhythm." B.T. was admitted to the intensive care unit and placed on a ventilator. B.T. remained in the intensive care unit for two weeks. After being released from the hospital, B.T. remained bedridden.

While B.T. was in the hospital, Tzankov gave the hospital a forged power of attorney for B.T. and blocked B.T.'s family from visiting B.T. and receiving information about her. On January 25, 2020, Tzankov logged into B.T.'s bank account online and transferred approximately $105,000 out of B.T.'s bank account. While B.T. was hospitalized, Tzankov wrote checks in B.T.'s name, including checks to pay Tzankov's credit cards. Tzankov continued to reside in B.T.'s house, which held "many valuable antique artifacts including furniture, paintings, [F]rench crystal, and family heirlooms . . . worth hundreds of thousands of dollars."

Son1 confronted Tzankov with the foregoing information at B.T.'s house and told Tzankov that "[n]othing was to be removed from the house." Tzankov asked, " '[W]hat's my cut?' " and refused to leave the house without compensation. Son1 then filed the petition for temporary and permanent elder abuse protective orders that would require Tzankov to move out of the home and stay at least 100 yards away from B.T. The petition set forth the foregoing facts, and Son1 signed the petition under penalty of perjury.

On February 25, 2020, the trial court granted a temporary elder abuse protective order (TPO) against Tzankov, protecting B.T., Son2, and Son2's wife. Tzankov was not present at the hearing. The minute order reflects, "Declaration regarding Ex[]parte notice filed"; however, that declaration from February 25, 2020, is not included in the record. The TPO was set to expire on March 13, 2020.

On February 28, 2020, Tzankov filed an ex parte application to change or end the TPO; however, that ex parte application is not included in the record on appeal. On that same date, Tzankov filed a Declaration Regarding Notice and Service of a Request for Temporary Emergency (Ex Parte) Orders. In the declaration, Tzankov asserted that the probate court had appointed a guardian ad litem to represent B.T., who had been deemed incompetent, so Son1 no longer represented B.T.'s interests. Additionally on February 28, 2020, the trial court held a hearing on Tzankov's ex parte request. Tzankov was present at the hearing. Also present at the hearing was B.T.'s guardian ad litem, Jeanne E. Kennedy (the Guardian), who is an attorney. The trial court denied the ex parte application.

On March 4, 2020, the trial court continued the hearing on the five-year protective order to April 6, 2020, so that hearing would occur on the same date as a conservatorship hearing concerning B.T. The trial court also extended the TPO to April 6, 2020. Tzankov was present in court on March 4. On April 6, 2020, the TPO was extended to April 8, 2020, and the hearing was continued to that same date. Tzankov was present in court on April 6, 2020.

4

On April 8, 2020, Tzankov filed a motion to quash service.  Tzankov asserted that Son1 lied when he claimed that Tzankov was personally served with "the complaint" on February 25, 2020.  Tzankov denied that he was personally served or that anyone attempted to serve him.  Tzankov asserted that, on February 25, 2020, San Bernardino County Sheriff's Deputies evicted him from his residence of 15 years and the deputies said B.T. had a restraining order against Tzankov.  Tzankov contended that, because he had not been served, the court lacked personal jurisdiction over him.

On April 8, 2020, the trial court could not determine if Tzankov's motion to quash had been properly served.  The court continued the hearing to June 17, 2020, and extended the TPO to that date.  Tzankov was in court on April 8, 2020.

The Guardian opposed the motion to quash.  The Guardian asserted that Tzankov consented to the court's jurisdiction by filing an ex parte application to change or terminate the TPO.  The Guardian asserted that Tzankov did not indicate he was specially appearing in either the written ex parte application or at the February 28, 2020, hearing on the application.  The Guardian noted that Tzankov had not raised the issue of improper service at any of his previous court appearances.

On June 17, 2020, the trial court held a hearing on the motion to quash.  The court said, "Mr. Tzankov, you have appeared in court on this matter on at least three occasions.  At no time, according to the minutes, did you ever indicate they were special appearances. . . .  [Y]ou were evicted from the Oak Hills property by the sheriffs.  It is most likely the sheriffs would have given you a copy of the petition and an order of the court.  They may not have.  But the reality is, you have generally appeared in the case

5

before, so the motion to quash is going to be denied." As to the five-year protective order, Tzankov requested a trial. The court set the matter for trial on July 27, 2020, and continued the TPO to July 30, 2020.

On July 27, 2020, the trial court announced that, per a courtroom deputy, Tzankov had been "arrested this morning in the High Desert and charged criminally with elder abuse and a few other charges." The trial court removed the case from the active trial calendar explaining, "[H]e's going to have to be arraigned, then there will be a preliminary hearing. And I have no idea how long all that is going to take." The court set a trial readiness date for October 15, 2020. The trial court also extended the TPO to October 19, 2020. Tzankov appeals from the orders entered on July 27, 2020.

On October 15, 2020, the trial court appointed a new guardian ad litem for B.T., continued the trial readiness hearing to December 3, 2020, and extended the TPO to December 14, 2020. On December 3, 2020, the attorney for B.T.'s conservator was ill, so the trial court continued the hearing to February 9, 2021, and extended the TPO. On February 9, 2021, the parties announced ready for trial. The trial court set a trial setting conference for March 4, 2021, and extended the TPO. On March 4, 2021, the hearing was continued to May 13, 2021, so Son1 could complete discovery, and the TPO was extended. The register of actions was printed on April 14, 2021, so it ends prior to the May 13, 2021, hearing.

## DISCUSSION

### A.     MOTION TO QUASH

Tzankov contends the trial court erred by denying his motion to quash. In the motion to quash, Tzankov asserted the trial court lacked jurisdiction over him because he was not served with "the complaint."

"A general appearance by a party is equivalent to personal service of summons on such party." (Code Civ. Proc., § 410.50.) "A general appearance occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed. . . . 'It does not require any formal or technical act.' " (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52.)

A party forfeits its jurisdictional objection and cannot raise the issue on appeal if the party makes a general appearance following the denial of the motion to quash. (*McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 258; *State Farm General Ins. Co. v. JT's Frames, Inc.* (2010) 181 Cal.App.4th 429, 437; Code Civ. Proc., § 418.10, subds. (c) & (e).) Thus, an alleged error in the denial of a motion to quash is typically raised in a petition for writ of mandate. (Code Civ. Proc., § 418.10, subd. (c).) However, "a defendant may reserve his jurisdictional objection on appeal if, after the denial of his motion to quash, he makes no general appearance but suffers a default judgment." (*McCorkle v. City of Los Angeles*, *supra*, 70 Cal.2d at p. 258.)

In *Mansour v. Superior Court* (1995) 38 Cal.App.4th 1750, "Sue Anna Cellini and Emil Askew separately moved to quash service of summons for lack of personal jurisdiction. The superior court denied each motion and the parties" sought relief in the

7

appellate court. In the appellate court, the real party in interest asserted that Cellini's and Askew's attorneys had made general appearances, so the issue of jurisdiction had been forfeited. (*Id*. at p. 1756.)

The appellate court noted that the attorneys for Cellini and Askew "participated in preparing a joint case management statement and appeared at and participated in an evaluation conference pursuant to local court rules." (*Mansour v. Superior Court*, *supra*, 38 Cal.App.4th at p. 1757.) The appellate court explained, "The case management evaluation procedure is intended to expedite the resolution of lawsuits by allowing the trial court to establish a schedule for discovery and law and motion matters, set a mandatory settlement conference and trial date and consider the possibility of using alternative dispute resolution methods. [Citation.] The process is thus premised on the trial court having jurisdiction over the parties participating in it. Askew and Cellini's responses on the case management statement and their active participation in the evaluation conference constitute a general appearance in the case. The mere fact Askew and Cellini had previously moved to quash service under Code of Civil Procedure section 418.10 and petitioned this Court to overturn the denial of their motions did not grant them immunity from making a general appearance by their subsequent participation in the litigation." (*Ibid*.) The appellate court concluded, "Cellini and Askew waived their right to challenge the superior court's denial of their motions to quash service of summons by making general appearances in the action." (*Id*. at p. 1758.)

In the instant case, the trial court denied the motion to quash on June 17, 2020. As that hearing continued, Tzankov told the trial court he wanted a trial on the petition for a five-year protective order and that, at trial, he would call three or four witnesses. Tzankov explained that one witness would "talk about the woman; another [would] talk about the son."

On October 15, 2020, and February 9, 2021, Tzankov announced he was ready for trial. By requesting a trial on the merits and announcing that he was ready for the trial, Tzankov indicated that he was submitting to the trial court's authority to decide the merits of the case. Thus, Tzankov generally appeared and thereby forfeited the jurisdictional issue.

Citing Code of Civil Procedure section 418.11, Tzankov asserts that he has only appeared at ex parte proceedings, and, therefore, he has not made a general appearance. Code of Civil Procedure section 418.11 provides, "An appearance at a hearing at which ex parte relief is sought, or an appearance at a hearing for which an ex parte application for a provisional remedy is made, is not a general appearance and does not constitute a waiver of the right to make a motion under Section 418.10." "An ex parte proceeding is a proceeding that does not afford the opposing party notice and an opportunity to be heard on the requested relief." (*K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 181, fn. 15.) Tzankov fails to explain in what respect an appearance at which he chose to proceed via trial and appearances at trial readiness conferences meet the definition of appearing at "ex parte proceedings," and we do not see how those appearances could

meet that definition. Accordingly, we are not persuaded that Tzankov has only appeared at ex parte proceedings.

In sum, we conclude the jurisdictional issue has been forfeited because Tzankov made a general appearance in the trial court.

### B.   EXTENDING THE TEMPORARY RESTRAINING ORDER

Tzankov contends the trial court erred by repeatedly extending the TPO because the " 'Legislature did not intend temporary restraining orders to be continued in perpetuity.' "

When a temporary elder abuse protective order is issued, then "a hearing shall be held on the petition" "[w]ithin 21 days, or, if good cause appears to the court, 25 days, from the date that [the] request for a temporary restraining order is granted." (§ 15657.03, subd. (f).)  "Either party may request a continuance of the hearing, which the court shall grant on a showing of good cause.  The request may be made in writing before or at the hearing or orally at the hearing.  The court may also grant a continuance on its own motion." (§ 15657.03, subd. (n)(1).)  "If the court grants a continuance, any temporary restraining order that has been granted shall remain in effect until the end of the continued hearing, unless otherwise ordered by the court.  In granting a continuance, the court may modify or terminate a temporary restraining order." (§ 15657.03, subd. (o)(1).)

Tzankov does not indicate that he objected to the trial continuances and extensions of the TPO in the lower court.  Because Tzankov did not preserve the issue by objecting, he forfeited it for appellate review. (*People v. White* (1963) 222

10

Cal.App.2d 774, 779 [" 'The objection that the defendant was not brought to trial within the time specified in said [Penal Code] section 1382 cannot be raised for the first time on appeal' "]; see also *People v. Bolden* (2002) 29 Cal.4th 515, 561-562.)

### C.   PROCEDURAL ISSUES

Tzankov contends the trial court failed to follow proper procedures by setting a trial readiness hearing for October 15, 2020, when the parties announced they were ready for trial on June 17, 2020; by permitting a telephonic appearance (Cal. Rules of Court, rule 3.670(e)); and by not requiring trial briefs to be filed.  We address the issues in turn.

### 1.   *TRIAL READINESS CONFERENCE*

On June 17, 2020, the trial court denied Tzankov's motion to quash and set the trial for July 27, 2020.  On July 27, 2020, the trial court announced that Tzankov had been arrested and charged that morning for "elder abuse and a few other charges."  The court then removed the trial from the active trial calendar because Tzankov would "have to be arraigned, then there will be a preliminary hearing," and the court had "no idea how long all that is going to take."  The trial court set a trial readiness conference for October 15, 2020, and extended the TPO to October 19, 2020.

Tzankov's assertion that the court erred by setting a trial readiness conference after the parties had announced they were ready for trial on June 17, 2020, ignores two important points:  (1) the trial court had initially set a trial date of July 27, 2020, and (2) Tzankov was not present in court for the trial on July 27, 2020, because he had been arrested earlier that morning.  (See *Bains v. Department of Industrial Relations* (2016)

11

244 Cal.App.4th 1120, 1130 [" 'legal issues arise out of facts, and a party cannot ignore the facts in order to raise an academic legal argument' "].) Tzankov cannot complain of the trial court's failure to conduct a trial for which he had failed to appear. In addition to Tzankov's appellate argument ignoring relevant facts that are unfavorable to his position, there is no indication that Tzankov raised any objection to the October 19, 2020, readiness conference in the trial court. Therefore, we deem the issue forfeited for failure to preserve it. (*Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 670 [" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal' "].)

## 2. *TELEPHONIC APPEARANCES*

"To improve access to the courts and reduce litigation costs, courts should permit *parties*, to the extent feasible, to appear by telephone at appropriate conferences, hearings, and proceedings in civil cases." (Cal. Rules of Court, rule 3.670(a) [italics added].) However, personal appearances are required for trials. (Cal. Rules of Court, rule 3.670(e)(1)(A).) On July 27, 2020, attorneys were permitted to appear in-person for trials in San Bernardino County. (San Bernardino County Superior Court, Amendment to General Order: Limiting Public Access Due to COVID-19 (July 7, 2020).) On July 27, 2020, i.e., the date trial was scheduled, Son2's lawyer appeared telephonically.

Tzankov contends the trial court erred by permitting Son2's lawyer to appear telephonically. Son1—not Son2—petitioned the court for the protective order. In this case, Son2 is an additional protected person under the TPO. It is unclear if an additional protected person under a TPO would fall under the category of people who need to

12

appear in-person at a trial. (Cal. Rules of Court, rule 3.670(a) ["parties"] & (e)(1)(A); § 15657.03, subd. (b)(3) [" 'Petitioner' means the elder or dependent adult to be protected by the protective orders and, if the court grants the petition, the protected person"].)

Nevertheless, to the extent one could conclude that the court erred, the error was harmless. Ultimately, a trial did not occur on July 27, 2020, and the case was removed from the active trial calendar due to Tzankov being arrested and charged that morning. There is nothing indicating that a result more favorable to Tzankov would have occurred if Son2's attorney had appeared in-person. Therefore, if there were an error, then it was harmless. (Code Civ. Proc., § 475.)

### 3. *TRIAL BRIEFS*

A person may request an elder abuse protective order by filing a petition in the trial court. (Welf. & Inst. Code, § 15657.03, subd. (a)(2).) "The respondent may file a response that explains or denies the alleged abused." (Welf. & Inst. Code, § 15657.03, subd. (g).) Thus, the statute contemplates the filing of a petition and an optional response. Tzankov does not indicate that he requested the filing of trial briefs in the trial court. Accordingly, he has forfeited the issue for appellate review. (*Sander v. Superior Court*, *supra*, 26 Cal.App.5th at p. 670 [" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal' "].)

On appeal, Tzankov cites California Rules of Court, rule 5.394(a), which pertains to trial briefs in the family court. The rule provides that, in cases in which trial briefs have been ordered, the briefs should include certain content such as the date of the marriage and the date of the separation. (Cal. Rules of Court, rule 5.394(a)(1)(A)&(B).)

13

The instant case was heard with a related probate court matter concerning B.T.'s conservatorship. Thus, it appears the matter was heard in the probate court—not the family court. So, the rule regarding the contents of family court trial briefs does not apply in this case because (1) trial briefs were not requested or ordered in this case, and (2) this does not appear to be a family court case.

In sum, Tzankov did not request trial briefs be filed in the lower court, so the issue has been forfeited.

## DISPOSITION

The orders are affirmed. Appellant is to bear his own costs on appeal.[3] (Cal. Rules of Court, rule 8.278(a)(5); see also Welf. & Inst. Code, § 15657.03, subd. (t).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
                                                                    J.

We concur:

McKINSTER
            Acting P. J.

CODRINGTON
            J.

---

[3] No respondents have appeared on appeal.